IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
1:25-cv-28

| | |
|---|---|
| LEIGH WRIGHT, AND ) <br> KENNETH WRIGHT, ) <br>     *Plaintiffs,* ) <br> ) <br> v. ) <br> ) <br> BEECH MOUNTAIN RESORT, INC., ) <br>     *Defendant.* ) | **COMPLAINT** <br> **(JURY TRIAL DEMANDED)** |

NOW COME Plaintiffs Leigh Wright and Kenneth Wright, complaining of the Defendant, and allege as follows:

## THE PARTIES

1. Plaintiff Leigh Wright was at all relevant times a citizen and resident of Kingsport, Tennessee.

2. Plaintiff Kenneth Wright was at all relevant times a citizen and resident of Kingsport, Tennessee.

3. Defendant Beech Mountain Resort, Inc. (hereafter "Beech Mountain Resort") is a North Carolina corporation with its principal place of business located at 1007 Beech Mountain Parkway, Beech Mountain, North Carolina.

4. Beech Mountain Resort is located in both Avery and Watauga Counties in North Carolina.

5. This case arises from an incident (hereafter the "incident") that occurred on February 4, 2022, on a ski slope located at Beech Mountain Resort in Avery County, North Carolina.

1

6. During winter months and ski season, Defendant Beech Mountain Resort opens to the public for use of its ski slopes.

7. During February 2022, Defendant Beech Mountain Resort was open to the public for use of its ski slopes.

8. During February 2022, Defendant Beech Mountain Resort was open to Leigh Wright for use of its ski slopes.

9. On February 4, 2022, Plaintiff Leigh Wright was a minor and lawful visitor at Beech Mountain Resort.

## JURISDICTION AND VENUE

10. This Court has personal jurisdiction over the parties and subject matter jurisdiction over the subject of this lawsuit.

11. This Court has jurisdiction over the lawsuit under 28 U.S.C. § 1332(a)(1) because Plaintiffs and Defendants are citizens of different U.S. states, and the amount in controversy exceeds $75,000, excluding interest and costs.

12. This Court has supplemental jurisdiction under 28 U.S.C. § 1367 over Plaintiffs' state-law claims because they are so related to the claims within the Court's original jurisdiction that they form part of the same case or controversy under Article III of the U.S. Constitution.

13. Venue is proper in this district under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to this claim occurred in this district and Defendants regularly conduct business in this district and market their services for use and sale in this district.

14. Venue is proper in the Asheville division of this district because, upon information and belief, the incident took place in Avery County; further, counsel for both Plaintiff and Defendant are located in Asheville, North Carolina.

## FACTS

15. Defendant Beech Mountain Resort is a "ski area operator" as that term is defined in N.C.G.S. § 99C-1(5).

16. Defendant Beech Mountain Resort had a duty to use ordinary care to design and maintain the ski resort premises, including the ski slopes, in a reasonably safe condition for lawful visitors who use the premises in a reasonable and ordinary manner.

17. Part of Defendant Beech Mountain Resort's duty to the public included the safe and reasonable design, maintenance, inspection, and operation of the ski slopes, including safe and reasonable installation and/or placement of snowmaking devices and/or snowmaking towers.

18. Part of Defendant Beech Mountain Resort's duty to the public included fixing and/or remedying any hidden or concealed dangerous condition located on the premises, and if the hidden or concealed dangerous condition could not be fixed or remedied, then it had a duty to erect a barrier around the hidden or concealed dangerous condition to prevent skiers from striking the fixed object and suffering a severe injury or death, and if a proper barrier could not be installed or placed, then Beech Mountain Resort had a duty to warn skiers about the hidden or concealed dangerous condition.

19. Defendant Beech Mountain Resort had a statutory duty "to mark with a visible sign or other warning implement the location of any hydrant or similar equipment that is used in snowmaking operations and located anywhere in the ski area." N.C.G.S. § 99C-2(c)(2).

20. The snowmaking device and/or snowmaking tower at issue in this case constitutes a "hydrant or similar equipment" as those terms are used in N.C.G.S. § 99C-2(c)(2).

21. Defendant Beech Mountain Resort had a statutory duty "to post at or near the top of or entrance to, any designated slope or trail, signs giving reasonable notice of unusual conditions on the slope or trail." N.C.G.S. § 99C-2(c)(4).

22. Defendant Beech Mountain Resort had a statutory duty "to provide adequate ski patrols." N.C.G.S. § 99C-2(c)(5).

23. Defendant Beech Mountain Resort had a statutory duty "to mark clearly any hidden rock, hidden stump, or any other hidden hazard known by the ski area operator to exist." N.C.G.S. § 99C-2(c)(6).

24. Defendant Beech Mountain Resort had a statutory duty "to inspect the winter sports slopes . . . that are open to the public at least twice daily and maintain a log recording: (i) the time of the inspection and the name of the inspector(s); and (ii) the general surface conditions, based on industry standards, for the entire ski area at the time of the inspection." N.C.G.S. § 99C-2 (c)(6a).

25. Defendant Beech Mountain Resort had a statutory duty "to post, in a conspicuous manner, the general surface conditions for the entire ski area twice daily." N.C.G.S. § 99C-2(c)(6b).

26. Defendant Beech Mountain Resort had a statutory duty "not to engage willfully or negligently in any type conduct that contributes to or causes injury to another person or his properties." N.C.G.S. § 99C-2(c)(7).

27. The above statutory duties in Paragraphs 19-27 are safety statutes.

28. A violation by Defendant Beech Mountain Resort of any one of the above statutory duties constitutes negligence *per se* if such violation proximately caused injury to Plaintiff Leigh Wright per N.C.G.S. § 99C-3.

29. On February 4, 2022, Plaintiff Leigh Wright, age 17, suffered a catastrophic brain injury and other severe injuries while skiing at Beech Mountain Resort.

30. Plaintiff Leigh Wright had an ANSI approved ski helmet properly adjusted, fitted, and secured to her head at the time of the incident.

31. On the day of, but before, the incident, Plaintiff Leigh Wright rented skis, boots, and a helmet from Beech Mountain Resort.

32. Plaintiff's skis, boots, and helmet were properly fitted and adjusted at the time of the incident.

33. Immediately before the incident, Plaintiff Leigh Wright was skiing in an area where the slope she was on intersected one or more other slopes.

34. Before this incident, Defendant Beech Mountain Resort had placed, constructed, and/or installed an unmarked and unpadded metallic snowmaking device and/or snowmaking tower in a ditch, ravine, gully, and/or depression at the intersection of one or more slopes.

35. The snowmaking device and/or snowmaking tower was a hidden or concealed danger by virtue of it being located in a ditch, ravine, gully, and/or depression at the intersection of one or more slopes.

36. Further, any rope, twine, string, and/or other warning device placed by Defendant Beech Mountain Resort to alert skiers of the hidden or concealed dangerous condition was wholly inadequate to bring the dangerous condition to the attention of a reasonably prudent skier coming down the ski slope.

37. Upon information and belief, Defendant Beech Mountain Resort had one or more other similar incidents occur on its slopes in the ten years before the incident at issue, when a skier or snowboarder struck a snow making device, snowmaking tower, snow-grooming equipment, and/or other fixed object and suffered injury and/or died.

38. In the other similar incident(s) the snowmaking device, snow tower, snow-grooming equipment, and/or other fixed object was not padded with closed or open cell foam padding and/or any other safety device at the time of the prior similar incident(s) to prevent severe injuries in the event a collision with the object(s).

39. Despite the prior other similar tragic incident(s), Defendant Beech Mountain Resort made the conscious and deliberate decision not to install foam safety

padding, inflatable safety tubes, safety fencing, and/or other protective safety devices on all of its snowmaking devices, snowmaking towers, snow-grooming equipment, and/or other dangerous, hidden, or concealed fixed objects to reduce the likelihood of a severe and catastrophic injury in the event a skier or snowboarder were to collide with the dangerous fixed object.

40. It has been well known in the ski industry in North Carolina and the United States for more than a decade that, unless ski resorts and ski operators take proactive measures to install protective safety devices, such as foam safety padding, inflatable safety tubes, safety fencing, and/or other protective safety devices on and around dangerous fixed objects located on or near their slopes, it is foreseeable that skiers and/or snowboarders will collide with those fixed objects and suffer severe injuries and/or death.

41. Defendant Beech Mountain Resort knew or should have known about the unreasonable danger posed by its snowmaking devices, snowmaking towers, and/or other fixed objects on or near its ski slopes well before the incident in this case.

42. After the prior other similar incident(s), Defendant Beech Mountain Resort knew that it was foreseeable that skiers and/or snowboarders were likely to collide with dangerous fixed objects on their property and suffer severe injuries and/or death.

43. This unmarked snowmaking tower in this incident was referred to by Defendant Beech Mountain as the "$CO_2$" tower.

7

44. No warning sign was posted before this incident to notify approaching skiers of the existence of the unmarked, hidden, and/or concealed danger posed by the "CO2" snowmaking tower located in a ditch, gully, ravine, and/or depression in the path between the slopes.

45. The unmarked metallic "CO2" snowmaking tower had no protective safety fencing, foam safety padding, inflatable safety tube, and/or other protective barrier around it sufficient to protect skiers from colliding with it and suffering a severe injury.

46. Plaintiff Leigh Wright fell on the slope at or near this intersection of the above-mentioned slopes and slid into the ditch, ravine, gully, and/or depression causing her to glide straight into the metallic "CO2" snowmaking tower. As a result, she struck her head on the metallic snowmaking tower and suffered severe and catastrophic injuries, including but not limited to a traumatic brain injury, cerebral hemorrhage, skull fractures, hearing loss, pneumocephalus, bilateral occipital condyle fractures, left temporal fracture, facial fractures of the sphenoid sinus walls, and an anterior mandible fracture, as well as other lacerations, puncture wounds, cuts, bruises, and/or abrasions. While Plaintiff Leigh Wright suffered severe and catastrophic physical injuries, she also suffered severe and catastrophic emotional injuries in the form of post-traumatic stress disorder, anxiety, depression, and other emotional injuries.

47. As a direct and proximate result of the incident, Plaintiff Leigh Wright suffered serious, painful, permanent, and debilitating injuries to her mind and body,

including, but not limited to, severe injuries to her brain causing a permanent disability, as well as mental anguish, permanent limitations to her body and its ability to function as it did prior to the incident, loss of career opportunities, and loss of enjoyment of life. Additionally, Plaintiff Kenneth Wright has incurred expenses for medical care on Leigh Wright's behalf while she was a minor, and other damages, all in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00).

48. Immediately after the incident, Defendant Beech Mountain Resort constructed and/or installed a bright orange safety fence around the "CO2" snowmaking tower.

49. Following this incident, Defendant Beech Mountain Resort did not install and/or place any foam safety padding around the "CO2" snowmaking device and/or snowmaking tower to protect skiers and/or snowboarders from running into and/or striking the object.

50. During the spring or summer following the incident, Defendant Beech Mountain Resort removed and/or relocated the "CO2" snowmaking tower from the location where it was at the time of this incident.

51. Defendant Beech Mountain Resort removed the "CO2" snowmaking tower from the location where it was at the time of this incident because it was a hidden and/or concealed hazard and/or danger to skiers and/or snowboarders.

**FIRST CLAIM FOR RELIEF**
**Negligence, Gross Negligence, Willful or Wanton Conduct, Recklessness**

52. The allegations contained in the above paragraphs of the Complaint are incorporated herein by reference as if fully set forth.

53. The incident and resulting injuries to Plaintiff Leigh Wright were proximately caused by the negligence, gross negligence, recklessness, and/or willful or wanton conduct of Defendant Beech Mountain Resort.

54. Defendant Beech Mountain Resort was negligent, grossly negligent, willfully or wantonly negligent, and/or reckless in one or more of the following ways:

   a. It failed to design its ski slope in a proper manner;

   b. It failed to place the specific "CO2" snowmaking tower in a reasonable and proper location;

   c. It chose to place its "CO2" snowmaking tower in an unreasonably dangerous location such that the hazard was hidden and/or concealed;

   d. It failed to fix and/or remedy the hidden and/or concealed dangerous condition;

   e. It failed to maintain its ski slope in a proper manner;

   f. It failed to maintain its "CO2" snowmaking tower in a proper manner;

   g. It failed to properly inspect its ski slope for hidden and/or concealed dangerous conditions, such as the "CO2" snowmaking tower at issue;

   h. It failed to recognize the unreasonably dangerous condition created by the particular "CO2" snowmaking tower involved in this incident, or recognized the unreasonably dangerous condition and chose not to do anything about it to prevent skiers from skiing and/or falling into it and suffering severe injuries;

   i. It created a ditch, gully, ravine, and/or depression that could trap a novice or less experienced skier and cause them to unintentionally ski directly into the "CO2" snowmaking tower;

   j. It allowed the snow to accumulate in such a way as to create a ditch, gully, ravine, and/or depression that could foreseeably trap a novice or less experienced skier and cause them to unintentionally ski directly into the "CO2" snowmaking tower;

k. It failed to hire and/or retain a ski industry professional(s) to consult and make recommendations about the proper location for snowmaking devices and/or snowmaking towers, like the one at issue;

l. It failed to educate itself and/or its managers about the serious risks and dangers posed by fixed objects on or near its ski slopes;

m. It failed to educate itself and/or its managers about the use of safety devices, such as foam safety padding, expandable fencing, and inflatable tubes, to prevent serious injuries and deaths caused by skiers unintentionally colliding with fixed objects on or near the ski slopes;

n. It failed to hire and/or retain a ski industry professional(s) to consult and make recommendations about the proper use of protective safet devices, such as closed and open cell foam pads, inflatable safety tubes, flexible safety fences, and/or other safety devices to create a safety barrier around snowmaking devices and/or snowmaking towers like the one at issue, in order to prevent foreseeable incidents and catastrophic injuries like occurred in this case;

o. It failed to install adequate protective equipment around the snowmaking tower, such as closed and/or open cell foam safety pads, inflatable safety tubes, and/or safety fences in violation of local and national industry customs and practices;

p. It failed to properly train, instruct, and/or supervise its ski slope employees and/or agents regarding the proper use and/or placement of safety devices, such as closed and open cell foam safety pads, inflatable safety tubes, and/or bright orange flexible safety fences, around fixed objects like the snowmaking tower ("CO2") at issue;

q. It failed to properly hire, qualify, train and/or supervise its employees and/or agents in a reasonable manner with regard to the installation, inspection, and/or maintenance of the "CO2" snowmaking tower;

r. It failed to install or erect a proper safety barrier, such as foam safety padding, orange safety fencing, inflatable safety tubing, or other safety device or structure to prevent skiers from striking the "CO2" snowmaking tower at issue;

11

s. It failed to warn skiers, and specifically Leigh Wright, about the hidden and/or concealed danger of which it was, or should have been, aware;

t. It failed to install or post a sign that was reasonably visible to skiers and/or otherwise properly warn skiers of the danger posed by the "CO2" snowmaking tower, in violation of N.C.G.S § 99C-2(c)(2) and (4);

u. It failed to provide adequate ski patrols in violation of N.C.G.S. § 99C-2(c)(5);

v. It hired or employed inexperienced, incompetent and/or otherwise unqualified employees and/or agents to install, inspect, and/or maintain the ski slope, and particularly the "CO2" snowmaking tower;

w. It failed to comply with local and national industry customs and practices for hiring, qualifying, training, and/or supervising ski resort employees and/or agents;

x. It was otherwise negligent, grossly negligent, willfully or wantonly negligent, and/or reckless by engaging in conduct that caused and/or contributed to the injuries suffered by Plaintiff Leigh Wright.

y. Plaintiff reserves her right to amend her Complaint and add to these allegations as more information is gathered during the discovery process.

## SECOND CLAIM FOR RELIEF
**Punitive Damages**

55. The allegations contained in the above paragraphs of the Complaint are incorporated herein by reference as if fully set forth.

56. The conduct of Defendant Beech Mountain Resort was grossly negligent, willful, wanton, reckless, oppressive, consciously indifferent and in callous disregard of the rights and safety of the general public, and particularly Plaintiff Leigh Wright.

57. As a direct and proximate result of the grossly negligent, oppressive,

12
Case 1:25-cv-00028-MR-WCM     Document 1     Filed 01/28/25     Page 12 of 14

willful, wanton, reckless, oppressive, and/or consciously indifferent conduct of Defendant Beech Mountain Resort, it is liable to Plaintiff Leigh Wright for punitive damages.

58. The aggravating factor in this case is the gross, willful, wanton, and/or reckless conduct of Defendant, as defined in N.C.G.S. § 1D-5(7) and set forth above.

59. The existence of this aggravating factor will be established by clear and convincing evidence.

60. There is a need to punish this Defendant for its egregiously wrongful conduct described above and to deter it and others from committing similar wrongful acts in the future.

61. Plaintiff Leigh Wright is therefore entitled to recover such punitive damages as may be awarded which bear a rational relationship to the sum reasonably needed to punish Defendant and/or deter it or others from engaging in this or similar wrongful conduct in the future or to make an example of them.

62. As a direct and proximate result of the negligence, gross negligence, willful, wanton and/or reckless conduct of Defendant Beech Mountain Resort, Plaintiff Leigh Wright suffered serious, painful, permanent, and debilitating injuries to her mind and body, including, but not limited to, injuries to her head causing permanent disability, mental anguish, permanent limitations to her body, loss of function to a part or parts of her body, loss in her ability to perform her normal daily activities, loss of enjoyment of life, and other damages.

63. As a direct and proximate result of the negligence, gross negligence,

willful, wanton and/or recklessness of Defendant Beech Mountain Resort, Plaintiffs have been damaged in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00) as a result of Defendant Beech Mountain Resort's conduct.

**WHEREFORE,** Plaintiffs pray the Court as follows:

1. That Plaintiffs have and recover of Defendant a sum in excess of Seventy-Five Thousand Dollars ($75,000.00), for compensatory damages, plus interest as allowed by law from the date of filing, including pre- and post-judgment interest;

2. That Plaintiffs have and recover of Defendant punitive damages;

3. That there be a trial by jury on all issues of fact;

4. That the costs of this action be taxed against Defendant; and

5. That the Court grant any additional relief that it deems just and proper.

This the 28th day of January, 2025.

DAVIS LAW GROUP, P.A.

By: /s/ Brian F. Davis
Brian F. Davis
NC State Bar No.: 18159
Elizabeth Davis
NC State Bar No.: 21268
Josh Harper
NC State Bar No.: 50757
135 Cherry Street N.
Asheville, NC 28801
Telephone: (888) 773-8388
Facsimile: (888) 454-5291
bfd@davislawgroupnc.com
beth@davislawgroupnc.com
josh@davislawgroupnc.com
ATTORNEYS FOR PLAINTIFFS